NOT DESIGNATED FOR PUBLICATION

No. 118,197

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
ROBERT LEE SMITH.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed April 20, 2018.
Affirmed.

*Mark T. Schoenhofer*, of Wichita, for appellant.

*Dwight R. Carswell*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and MCANANY, JJ.

PER CURIAM: The State petitioned to have Robert Lee Smith civilly committed as a sexually violent predator. Due to numerous continuances, some of which were obtained without Smith being present and most of which were at the request of or with the consent of his attorney, Smith's trial did not occur until over two years after the petition was filed. On appeal, he argues that the district court erred in not granting his motion to dismiss the proceedings because of unconstitutional delay. He makes two key arguments. First, Smith argues that he had a right to be present when continuances were requested. Because we find that there is no such right to be present for continuance requests in a civil proceeding, this claim of error fails.

Smith also argues that his right to a speedy trial was violated by the long delay between petition, probable cause hearing, and final trial. But we find that after applying

1

the constitutional test set out in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the district court properly found that Smith's right to a speedy trial was not violated. Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Smith was previously convicted of rape, indecent solicitation of a child, and sexual battery. The day before Smith was scheduled to be released from prison the State filed a petition seeking to have Smith civilly committed under the Kansas Sexually Violent Predator Act (KSVPA). Counsel was appointed for Smith the same day the State filed the petition. Based on the petition, the district court found probable cause and set a hearing where probable cause could be contested a few days later, on March 17, 2015.

Smith's counsel was not present for the scheduled hearing. At the hearing, Smith stated: "'I want to have a hearing today and I'm entitled to an attorney today.'" At the time the State appeared to believe that Smith's appointed counsel had not received the notice of the hearing. The hearing was rescheduled to March 23, 2015.

On March 19, 2015, Smith's counsel filed several motions. It appears that Smith wanted the motions heard before the probable cause hearing. The State requested three extensions to respond to Smith's motions. On April 9, 2015, the court granted the continuance requests "without hearing and without appearances based on [Smith] having no objection." The probable cause hearing was then scheduled for May 27, 2015.

Approximately two weeks before the hearing, the district court judge informed the parties, through email, that he would be unable to hold the probable cause hearing on May 27, 2015, due to a scheduled surgery. The judge indicated that the parties could either: (1) have the hearing reassigned to another judge on the same day, or (2) continue the case to a later date. Counsel for Smith, through email, stated that he did not object to

2

a continuance. The probable cause hearing was held on July 9, 2015. The court took the matter under advisement.

Approximately two months later, the court found that probable cause existed to believe Smith was a sexually violent predator and ordered him transported to Larned State Security Hospital for an evaluation.

In October 2015, counsel for Smith filed a motion to alter or amend judgment. The State requested additional time to file a response. Later, the court denied Smith's motion and scheduled a jury trial for May 23, 2016.

On May 10, 2016, Smith's counsel, with approval from Smith, requested a continuance on the trial and setting of a discovery schedule. An "Agreed Pretrial/Case Management Order" was submitted to the court, setting a trial date of April 3, 2017.

On November 9, 2016, Smith's counsel was allowed to withdraw from the case, after 21 months of representation, due to changes in counsel's office. No other explanation was given by the court and the attorney's motion to withdraw is not in the record on appeal. Smith objected to his attorney's withdrawal from the case, noted that the attorney was still licensed to practice law in Kansas, and had represented him appropriately. He complained, correctly, that this would result in further delay in his case. Another attorney was appointed but subsequently withdrew due to a conflict of interest. A third attorney was appointed on December 9, 2016. On December 23, 2016, Smith filed a pro se motion to dismiss, arguing that his constitutional rights were being violated. On February 8, 2017, Smith filed a pro se motion to be present at all critical stages in any court proceeding. On February 23, 2017, Smith's third attorney filed a motion for continuance because Smith was retaining private counsel.

A fourth attorney, Smith's present counsel, entered his appearance on February 28, 2017. On March 17, 2017, a hearing was held where Smith's present counsel requested another continuance. Smith's counsel explained that he needed more time to resolve pretrial issues and obtain an expert witness for Smith. Smith indicated to the court that he was concerned with the delay. The State responded that it was prepared to go to trial on April 3, 2017. The court explained that in order to go to trial in April, Smith would have to do so without an expert. After discussing the matter with his attorney, Smith agreed to a continuance of the trial to July 31, 2017.

In May 2017, Smith filed a motion to dismiss for due process violations. The court denied Smith's motion, finding that the *Barker* factors weighed in favor of the State. A bench trial on stipulated facts was held on July 27, 2017, and Smith was found to be a sexually violent predator and ordered committed. Smith timely appeals.

ANALYSIS

*Smith did not have a statutory or a constitutional right to be present for continuance hearings.*

Smith first argues that he had a right to be present at continuance hearings to voice his objection to a continuance. Citing our Supreme Court's decision in *State v. Wright*, 305 Kan. 1176, 1178, 390 P.3d 899 (2017), he argues that his "right to be present at every critical stage was clearly violated." The State does not respond to this argument.

*Standard of Review*

Whether an individual's right to be present at a critical stage of a proceeding is violated is an issue of law over which appellate courts exercise unlimited review. 305 Kan. at 1178.

*Discussion*

The Kansas Supreme Court recently held that "[a] continuance hearing is a critical stage of a criminal trial, requiring the defendant's presence." 305 Kan. 1176, Syl. ¶ 1. *Wright* was a criminal case where Wright wrote multiple letters from jail stating that he did not want any more continuances and that he was "'invok[ing] [his] right to be present at all critical stages.'" 305 Kan. at 1177. Wright's attorney appeared before the district court, without Wright, and requested a continuance, delaying Wright's trial past the statutory speedy trial deadline. On appeal, the Kansas Supreme Court relied on the speedy trial *statute*, K.S.A. 2012 Supp. 22-3402, to find that a defendant has a right to be present and object to a request for a continuance. See 305 Kan. at 1178.

Because violation of the statutory right to speedy trial in a criminal case requires dismissal, the court in *Wright* found that if a defendant is "denied his or her right to be present and object at a continuance hearing, and the continuance is granted, it is unlikely there will be a remedy on appeal even if an appellate court later attributes the continuance time to the State." 305 Kan. at 1178. The court noted that "if a personal objection from the defendant is going to be more than a hollow gesture, it needs to be heard and adjudicated in the district court." 305 Kan. at 1178. Smith argues that the holding in *Wright* applies in the current case because of the similarities between "criminal cases and cases filed under the Sexually Violent Predator Act."

But, the current case is not a criminal case and different statutes apply. See K.S.A. 2017 Supp. 59-29a01 et seq.; *Kansas v. Hendricks*, 521 U.S. 346, 369, 117 S. Ct. 2072, 138 L. Ed. 501 (1997) (holding that proceedings under the KSVPA are not criminal proceedings).

The criminal speedy trial statute states:

> "If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within 150 days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant or a continuance shall be ordered by the court." K.S.A. 2017 Supp. 22-3402(a).

Also at play in *Wright* was the Sixth Amendment's Confrontation Clause that requires "[i]n all *criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." (Emphasis added.) U.S. Const. amend. VI. The United States Supreme Court has also recognized this same right as "protected by the Due Process Clause [of the Fifth Amendment] in some situations where the criminal defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 1484, 84 L. Ed. 2d 486 (1985).

The KSVPA provisions are markedly different. The KSVPA contains two pertinent timing provisions. The first addresses the time between petition and the finding of probable cause stating:

> "Within 72 hours after a person is taken into custody . . . or as soon as reasonably practicable or agreed upon by the parties, such person shall be provided with notice of, and an opportunity to appear in person at, a hearing to contest probable cause as to whether the detained person is a sexually violent predator." K.S.A. 2017 Supp. 59-29a05(b).

The second addresses the time between a finding of probable cause and the trial. Under this provision the trial must be held "[w]ithin 60 days" of the finding of probable cause. K.S.A. 2017 Supp. 59-29a06(a). The trial may be continued upon the request of either party for good cause. K.S.A. 2017 Supp. 59-29a06(a).

Moreover, unlike K.S.A. 2017 Supp. 22-3402(a), the time limitations set out in the KSVPA are not mandatory. Under the KSVPA "any time requirements set forth in [the KSVPA] . . . are intended to be directory and not mandatory and serve as guidelines for conducting proceedings under [the KSVPA]. K.S.A. 2017 Supp. 59-29a01(b).

At least one other panel of this court has found that due to these differences a patient in a SVP action has no right to be present at a continuance hearing. See *In re Care & Treatment of Kristek*, No. 115,148, 2016 WL 6139743, at *4 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1318 (2017). We find the panel's analysis persuasive.

First, an action under the KSVPA is a civil, not a criminal, proceeding. As such, the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights do not apply. See U.S. Const. amend. VI ("In all criminal prosecutions . . . ."); Kan. Const. Bill of Rights, § 10 ("In all prosecutions . . . .").

Next, unlike the situation in *Wright*, a failure to meet the timeline set out by statute in a KSVPA proceeding does not require the case to be dismissed. Because of the lack of a mandatory dismissal provision in the KSVPA, the need for the defendant to be present is not as urgent. See K.S.A. 2017 Supp. 59-29a01(b).

Accordingly, we find that Smith had no statutory or constitutional right to be present when the numerous continuances were requested by his attorneys.

*The district court did not err in finding that Smith's due process rights were not violated.*

Although he did not have a right to be present when his attorney or the State requested continuances, we agree with Smith that unreasonably continuing the case may impact his due process rights under the Fifth and Fourteen Amendments to the United

7

States Constitution. Civil commitment under the KSVPA constitutes a deprivation of liberty which requires some due process protections, including protection against excessive delay. *In re Care & Treatment of Ellison*, 305 Kan. 519, 526, 385 P.3d 15 (2016).

*Standard of Review*

Whether Smith's due process rights were violated because of the time between the petition, probable cause hearing, and trial presents a mixed question of law and fact. We review the factual findings underpinning a district court's application of the *Barker* factors for substantial competent evidence, but we review the legal conclusions drawn from those facts de novo. *In re Care & Treatment of Ellison*, 305 Kan. at 533.

*Consideration of the* Barker *factors*

In *In re Care & Treatment of Ellison*, 305 Kan. at 532, the Kansas Supreme Court held that the appropriate test for determining whether an individual's due process rights were violated due to an excessive delay was set out by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514. When a court is determining whether an individual's due process rights were violated due to a delay the court should address four factors:  (1) length of the delay; (2) reason for the delay; (3) individual's assertion of his or her right; and (4) prejudice to the individual. 407 U.S. at 530.

*Length of delay*

"When balancing the *Barker* factors, 'The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *In re Care & Treatment of Ellison*, 305 Kan. at 534-35 (quoting *Barker*, 407 U.S. at 530).

In this case, Smith's bench trial occurred over 800 days after the petition was filed and almost 700 days after probable cause was found to exist. Smith, the State, and the district court agree that this length of time is sufficient to warrant an examination of the remaining factors. There is substantial competent evidence to support this finding.

*Reasons for delay*

The second factor is characterized as an inquiry into whether the State or the individual is more to blame for the delay. *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). When considering this factor the court should assign different weights to different reasons. *Barker*, 407 U.S. at 531. For example, a deliberate attempt to delay the trial in an effort to hamper the defense should be weighed heavily against the State. 407 U.S. at 531. On the other hand, "a valid reason, such as a missing witness, should serve to justify appropriate delay." 407 U.S. at 531.

Additionally, any period of delay that is attributable to the individual should be considered a valid delay. *In re Care & Treatment of Ellison*, 305 Kan. at 535-36. Continuances obtained by defense counsel also count against the individual, even when the individual did not want the continuance. 305 Kan. at 536.

*Delay of probable cause hearing*

Under the KSVPA, after a petition is filed a probable cause hearing should occur "[w]ithin 72 hours . . . or as soon as reasonably practicable or agreed upon by the parties." K.S.A. 2017 Supp. 59-29a05(b). The time period between March 13, 2015, when the petition was filed, and July 9, 2015, the probable cause hearing, was 118 days. The ruling on probable cause occurred on September 4, 2015, 175 days from the initial petition.

9

The first delay in March 2015 occurred because Smith's counsel was not present for the initial probable cause hearing. Smith's counsel was not aware of the appointment. The district court did not discuss this period in its decision. This delay should not be attributed to Smith.

The next delay occurred in late March 2015, because Smith's counsel wanted multiple motions heard before the probable cause hearing. The district court correctly attributed this delay to Smith. Substantial competent evidence supports the district court's finding.

The next delay occurred because the district judge was unavailable on May 27, 2015. In an email sent to counsel on May 15, 2015, the judge offered two choices: (1) proceed as scheduled with a new judge; or (2) continue the hearing. Smith's counsel agreed to continue the case through email and stated that it should be an "agreed continuance." The district court found that although "[Smith] was not responsible for that delay, [he] nevertheless consented to it." The delay from May 27 to July 9, 2015, was agreed upon by the parties and should not be weighed against the State.

The district court heard evidence on July 9, 2015, and found that probable cause existed. The court took the matter under advisement and issued its ruling on September 4, 2015. The district court found that the delay between the hearing and the decision was reasonable because the judge had taken issues under advisement. After probable cause was found the parties mutually agreed upon a trial date of May 23, 2016.

The district court's findings of the time between the petition and finding of probable cause are supported by substantial competent evidence. Further, the ultimate legal conclusion was correct. While there was a significant delay between the petition and the finding of probable cause, most of the delay is attributable to Smith.

10

*Delay between finding of probable cause and trial*

There was also a significant delay between the finding of probable cause and the trial. Under the KSVPA a trial should be held within 60 days of the probable cause hearing. K.S.A. 2017 Supp. 59-29a06(a). However, "[t]he trial may be continued upon the request of either party and a showing of good cause." K.S.A. 2017 Supp. 59-29a06(a).

The trial did not occur on May 23, 2016. Instead, on May 10, 2016, Smith's counsel requested a continuance and sought a discovery schedule. In his email, Smith's counsel stated that Smith approved of the request. Smith now alleges that he did not agree to the continuance. A pretrial order was approved by the court in October 2016 which rescheduled the trial for April 3, 2017. The district court later noted this delay was significant but it was requested by Smith and for his benefit. The district court correctly noted that the continuance from May 2016 to April 2017 should be attributed to Smith. See *In re Care & Treatment of Ellison*, 305 Kan. at 535. Further, the delay is attributable to Smith even though he now states that he did not agree to the continuance. See *State v. Rivera*, 277 Kan. 109, 116-17, 83 P.3d 169 (2004) (rejecting argument that defense counsel's continuances should not be weighed against defendant because defendant did not approve them).

The next significant event that occurred was Smith's appointed counsel withdrawing, the appointment and subsequent withdrawal of Smith's second counsel, and the appointment of Smith's third counsel. Smith's third appointed counsel sought a continuance in February 2017 because Smith planned to hire private counsel. Smith's current counsel entered his appearance in late February 2017. We do pause to note that we are puzzled and concerned about why, just a few months short of trial, Smith's initial appointed counsel would be allowed to withdraw against Smith's wishes, with no clear reason in the record. In fact, the district judge noted in his memorandum order that there was no motion to withdraw in the file and he had no independent recollection of why he

11

allowed counsel to withdraw—obviously with no advance notice to Smith. It does appear, as Smith argues in his brief to this court, that Smith "was at the mercy of his attorneys."

In February 2017, Smith's counsel requested a continuance of the April trial date in order to familiarize himself with the case and obtain the services of an expert witness. The State requested a trial date of July 31, 2017, so that it would have time to review the expert's report. The State also stated that it was prepared to proceed with trial in April. Smith expressed his desire to have his trial at an earlier date. Smith was once again given a choice: (1) go to trial in April with no expert; or (2) go to trial in July and have the opportunity to retain an expert. After conferring with his attorney, Smith agreed to schedule the trial on July 31, 2017. The bench trial occurred on July 27, 2017. After weighing the above information, the district court correctly found that this delay should be attributed to Smith.

Ultimately, the district court found that after probable cause was found every "major continuance . . . was at the request of [Smith] for the benefit of [Smith]." The court also found that the only delays that could be attributed solely to the State were delays requested to extend the briefing schedule and the delay while the trial judge took matters under advisement. The court found those delays did not weigh heavily against the State. The district court's findings are supported by substantial competent evidence. A majority of the delay in this case is attributable to Smith.

*Smith's assertion of right*

This court weighs an individual's efforts to assert his or her right to a speedy trial. *In re Care & Treatment of Ellison*, 305 Kan. at 537. When an individual asserts his or her right to a speedy trial it should be considered strong evidence of whether the individual is being deprived of his or her right. 305 Kan. at 538.

12

Smith first asserted his right to a timely trial in a pro se motion in December 2016. That particular motion was stricken because "[Smith] has counsel. [Smith] is not entitled to 'hybrid' representation." The reference to hybrid representation is a result of Smith essentially asking for trial to occur without delay, while his counsel had already requested continuances of Smith's trial date. Smith first asserted his right through counsel in a motion to dismiss filed in May 2017. In *In re Care & Treatment of Ellison*, the court noted that an assertion that the case be dismissed for speedy trial violations is not a protected value under *Barker*. Instead, the individual should assert that a speedy trial on the merits occur. *In re Care & Treatment of Ellison*, 305 Kan. at 538.

However, the court in *In re Care & Treatment of Ellison* also seemed to construe this requirement liberally. See 305 Kan. at 538-39 (noting Ellison did not specifically request speedy trial). In this case, the State does not contest that Smith asserted his right to a speedy trial. The State argues that Smith's assertion of his right was instead tainted by his continued requests for continuances.

The district court noted that Smith, through his counsel, requested continuances. Additionally, the court noted that as to one of those continuances Smith was provided with an opportunity to have the trial in April 2017, a mutually agreed upon date. Smith agreed to continue the case in an effort to obtain a favorable expert witness. The district court concluded that the fact "this case is being tried on July 31 is not a factor that can be weighed against the State." This is incorrect. Smith asserted his objections to the delay in having his trial. This factor should weigh in favor of Smith, or against the State, but when considering the totality of the circumstances the weight given is minimal. See 305 Kan. at 539 (noting factor carried little weight because motions did not clearly assert the right and Ellison delayed setting motions for hearing).

*Prejudice to Smith*

Prejudice is "'assessed in the light of the interests of [individuals] which the speedy trial right was designed to protect[:] . . . . (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" 305 Kan. at 539 (quoting *Barker*, 407 U.S. at 532). The United States Supreme Court made it clear that the possibility of an impaired defense is the most important factor to consider. *Barker*, 407 U.S. at 532.

In this case, Smith's ability to present a defense was likely improved, rather than impaired, by the delay. Without the delay Smith would not have had an expert witness to testify on his behalf. Although we are troubled by the fact that his first attorney, who was in the case for almost two years, had not already designated an expert witness. Additionally, the extra delay helped his retained counsel familiarize himself with the case. However, the other two factors should still be considered. Smith was certainly prejudiced by his continued time in custody. The time Smith spent in custody is essentially dead time. As our Supreme Court pointed out in *Ellison*, had Smith been committed in compliance with the time guidelines in the KSVPA, he would have received treatment and several opportunities to petition for his release, opportunities he did not have while sitting in the county jail awaiting a trial. 305 Kan. at 541. Smith undoubtedly suffered from some level of anxiety while he was incarcerated.

The district court found that the issue of prejudice was ultimately "a wash." We believe this is a close call, but we find that substantial competent evidence supports this finding. On the one hand, Smith was prejudiced by the lengthy incarceration, but on the other that same lengthy incarceration was often at the behest of his attorneys who sought to provide the best possible defense available to Smith.

*Balancing the* Barker *factors*

Because there is substantial competent evidence to support each of the *Barker* findings made by the district court, there is support for the district court's legal conclusion that Smith's due process rights were not violated. While there was a significant delay between the initial petition and the final trial, much of that delay is attributable to Smith and his attorneys. The delay that is attributable to the State is minimal and not unreasonable. Under these circumstances, the district court did not err in denying Smith's motion to dismiss.

Affirmed.